UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DENISE B. D'APRILE,

          Plaintiff,

-vs-                          Case No. 2:09-cv-270-FtM-36SPC

UNUM LIFE INSURANCE COMPANY OF
AMERICA,

          Defendant.
_____

## ORDER

This matter comes before the Court on Defendant's Motion to Compel Documents in Response to Defendant's Third Request for Production (Doc. #104) filed on August 30, 2010. Plaintiff filed her Response (Doc. #123) on September 17, 2010. The Motion is now ripe for review. Also before the Court is Defendant's Motion to Compel Better Interrogatory Responses and Documents (Doc. #105). Plaintiff filed her Response to this Motion on September 17,2 010 (Doc. #124). This Motion is also now ripe for review. Since both of these Motions deal with similar discovery issues, the Court will address both in this Order.

## BACKGROUND

This is a breach of contract action brought by Denise B. D'Aprile, an attorney practicing in Port Charlotte, Florida. On February 26, 1992, Defendant Unum Life Insurance Company of America issued to Plaintiff a disability income insurance policy ("the Policy") through her former employer, Olmsted, Schwarz & Kahle, P.A. After becoming pregnant during the early part of 2003, Plaintiff reportedly experienced a disability due to her pregnancy which restricted her ability to work.

Specifically, Plaintiff claimed that she was placed on bed rest as of February 29, 2003, and that she then developed a varicosity that prevented her from sitting for any length of time. Plaintiff asserts that she was unable to practice her occupation beginning in March 2003. Based on this disability, Plaintiff made a claim for long-term disability benefits under the Policy and after Defendant found that Plaintiff had satisfied her Policy's 90-day Elimination Period, she was paid benefits pursuant to the Policy from June 16, 2003 to December 4, 2003. The Policy provides a disability benefit for each month the insured continues to be "disabled" as defined in the Policy. Monthly disability benefits are conditioned upon continuing periodic proof of loss. Defendant denied Plaintiff's request for benefits on May 3, 2004, on the ground that it did not find restrictions and limitations that would restrict Plaintiff's ability to perform the material and substantial duties of her regular occupation. Plaintiff asserts that as a result of conditions arising from her pregnancy and subsequent co-morbid conditions, D'Aprile at all times from March 16, 2003 through the present has been unable to perform the personal services of her regular occupation and as a result she has experienced at least a 20% loss of net income in her regular occupation.

Defendant asserts in the instant Motions that Plaintiff's earnings before and after the date of Plaintiff's alleged disability, her occupational duties, her ability to continue to engage in her professional activities, and her medical history are issues central to this suit to which Defendant must perform discovery on in order to prepare an adequate defense to Plaintiff's claims. Unum filed the instant Motion (Doc. #104), alleging that Plaintiff's responses to Numbers 1, 3, 6, and 7 in Defendant's Third Request for Production of Documents, are insufficient. Unum's second Motion (Doc. #105), alleges that Plaintiff's responses to Interrogatory No. 3 in Defendant's First Set of

Interrogatories to Plaintiff, and Plaintiff's responses to Requests No. 1, 3, 8, 9, and 12 in Defendant's First Request for Production to Plaintiff, are insufficient.

## DISCUSSION

Rule 26(b) defines the scope of discovery as including "any matter, not privileged, that is relevant to the claim or defense of any party" or, upon a showing of good cause, "any matter relevant to the subject matter involved . . ." It is well established that courts employ a liberal discovery standard "in keeping with the spirit and purpose of the discovery rules." Tate v. U.S. Postal Service, 2007 WL 521848, *1 (S.D. Fla. Feb. 14, 2007). The Federal Rules state that, "[t]he party upon whom the request [for production] is served shall serve a written response within 30 days after the service of the request." Fed. R. Civ. P. 34(b). If the serving party does not receive a response to their interrogatories and request for production the serving party may request an order compelling disclosure. Fed. R. Civ. P. 37(a). Whether or not to grant an order compelling discovery lies within the sound discretion of the trial court. Commercial Union Insurance Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984).

The Court will now address each of Defendant's Requests in turn:

### Defendant's Third Request for Production of Documents (Doc. #104)

**Request Number 1**: A backup copy of the accounting data maintained in the QuickBooks accounting software utilized for Plaintiff's practice, Law Office of Denise D'Aprile, P.A., for the period of January 2002 through the present.

Defendant states that this Request is directed toward obtaining information regarding Plaintiff's earnings from her professional activities for the time period covering her disability and the period of time immediately before it. It is undisputed that Plaintiff has produced Quickbooks data that was adjusted by her accountant and subsequently submitted with her tax returns. But Defendant contends

that the entire QuickBooks file is necessary to "independently calculate Plaintiff's monthly income and expenses before and after her disability," and almost nothing has been produced in this regard.

The Court finds that information regarding Plaintiff's earnings from her professional activities before and after her date of disability are relevant as this information may be used to determine whether she is entitled to benefits under the terms of the Policy. But Unum should have already have this information from Plaintiff's tax returns and related documents. In this Court's July 21, 2010 Order (Doc. #75), it denied Plaintiff's motion for protective order and ordered that Plaintiff's subpoenaed tax return records from her accountants be produced. The Court found that Defendant was entitled to discovery on Plaintiff's financial losses relative to her pre-disability earnings in order to defend against her claims. And it was not apparent that this information is otherwise readily obtainable or already in Defendant's possession. Defendant was entitled to D'Aprile and her husband's joint returns because it contains Plaintiff's income and earnings information that is material and relevant to Defendant's defenses to Plaintiff's claim of lost income. The Court ordered that the tax returns and related documents in possession of Hackney, Ames & Heitman, P.A. and Michael W. Monahan be produced and handled pursuant to the Court's Protective Order of Confidentiality (Doc. #46). Even though the Court entered this Order on July 21, 2010, the documents have yet to be produced.

To the extent Defendants are seeking to obtain Quickbooks data beyond what has already been provided, the Request is due to be denied. As previously ordered by this Court, Defendant may obtain copies of Plaintiff's pre and post-disability tax returns and documents from Plaintiff and Plaintiff's accountants. Plaintiff's Counsel has represented to the Court in Doc. #124 that it would produce the unredacted W-2s by **September 23, 2010**. Further discovery into the Quickbooks data

would be cumulative. "Federal Rule of Civil Procedure 26 authorizes a court to limit discovery where such discovery is cumulative or duplicative . . . ." <u>Panola Land Buyers Ass'n v. Shuman</u>, 762 F.2d 1550, 1559 (11th Cir. 1985). Thus, the Motion with regard to this request is due to be denied.

* * *

> **Request Number 3:** Copies of all reports (i.e. consult logs, etc.) that indicate the Plaintiff's new case filings, open case lists and/or documentation that monitor cases by type of case law (i.e. bankruptcy, personal injury), date filed, date settled, etc., for the period of January 2002 through the present.

Defendant states that an agreement between the parties was reached wherein Plaintiff would produce a case list which would provide the information being sought by Request No. 3, but that Plaintiff has failed to produce the case list. Plaintiff's Response indicates that she has produced this case list since Defendant's Motion was filed. Defendant did not file a reply brief to refute this assertion. Thus, the Motion with regard to this Request is due to be denied as moot.

* * *

> **Request Number 6**: Copies of all settlement agreement and fee splitting agreements related to revenues received by the practice during the period of January 2002 through present. Client names may be redacted.

Plaintiff objected to this Request as overly broad, not relevant, and seeking confidential and proprietary information. Defendant argues that this Request is directed toward obtaining information regarding Plaintiff's income from her professional activities, as well as the nature of her professional activities. Plaintiff's response to this Request, in conjunction with her privilege log, also indicates that she has withheld a "[l]ist of fees/costs for cases from 2000 to 2008" on the ground that the list constitutes "[p]roprietary and confidential business information belonging to" Goldstein, Buckley, Cechman, Rice & Purtz, P.A.

Plaintiff's Brief indicates that she has withdrawn her privilege objection, and has produced a list of case fees and costs for cases that Plaintiff litigated with Goldstein, Buckley, Cechman, Rice & Purtz, P.A., and the firm of Lytal, Reiter, Clark, Fountain and Williams, going back to 1999. The Court finds that this production satisfies Plaintiff's obligations under Federal Rule 37 as to this Request. As discussed above, Plaintiff's tax returns and documents from her accountants should provide the financial information regarding Plaintiff's income from her professional activities. Further, the information Plaintiff has produced in response to this Request will provide Defendant with the nature of her professional activities. Thus, the Motion with regard to this Request is due to be denied.

\* \* \*

**Request Number 7**: All trust account records, ledgers and bank statements for the period of January 2002 through the present.

Plaintiff responds that she has already produced bank statements, so that request is now moot. With regard to the trust account records and ledgers, Defendant asserts that it is seeking this information as it relates to Plaintiff's law practice, which are directly relevant to Plaintiff's revenue and, thus, her income. Plaintiff counters that this information is confidential and privileged.

The Court is mindful that trust account records and ledgers may contain confidential information, such as the identity of a client and fees paid by that client. Under the Florida Rules of Professional Conduct 4-1.6, "a lawyer shall not reveal information relating to representation of a client except as stated in subdivisions (b), (c), (d), unless the client consents after disclosure to the client." Subdivisions (b), (c), and (d) are not applicable in this case. Defendant points out in its Brief that the party seeking discovery of confidential information must make a showing of necessity which outweighs the countervailing interest in maintaining the confidentiality of such information.

Citing Higgs v. Kampgrounds of America, 526 So.2d 980, 981 (Fla. 3d DCA 1988). In this case, Defendant has failed to make this showing. Defendant will receive Plaintiff's tax returns, documents from Plaintiff's accountants, bank statements, and a list of case fees. Thus, Defendant's need does not outweigh the ethical rules imposed on attorneys by the Florida Bar. The Motion with regard to this Request is due to be denied.

### Defendant's First Set of Interrogatories to Plaintiff (Doc. #105)

**Interrogatory No. 3**: Please identify the name, current or last known business address, and current or last known telephone number all physicians and other health care providers (including psychiatrists, psychologists or mental health counselors), of whatever nature, that have treated or examined you from 1999 until the present. As to each, please briefly identify the reason(s) for which you were treated or examined and the approximate dates of such treatment of examination.

Plaintiff objects to this Interrogatory on the grounds that it is overbroad. This objection is not well taken. Plaintiff's health both before and after her alleged disability are central to this suit. Defendant is entitled to a complete picture of Plaintiff's health history in order to defend against her claims.

### Defendant's First Request for Production to Plaintiff (Doc. #105)

**Request Number 1**: All life, health, medical or disability insurance policies, including group coverage, that have been issued to you at any time since 2001.

Plaintiff objects to this Request on the grounds that the documents are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff did state in response that she has not been issued any disability insurance policies since 2001 and the disability insurance policy that is the subject of this claim was issued prior to 2001. Notwithstanding this information, Plaintiff has refused to provide information regarding, or even state whether she has life, medical, or health policies that are responsive to this Request. All of these types of policies are clearly relevant and discoverable. These policies and associated documents may contain information or

reflect the state of Plaintiff's health during the specified time period. Thus, this Request is relevant and could lead to the discovery of admissible evidence.

\* \* \*

>**Request Number 3**: All applications you have completed to obtain life, health, medical or disability coverage (whether or not any policies were issued in response to such applications) from 2001 to the present, including all records regarding your application for disability coverage with Defendant.

This Request is similar to Number 1, and as discussed above seeks relevant information that is discoverable. Thus, this Request is due to be granted.

\* \* \*

>**Request Number 8**: All medical records concerning your physical and mental health, including records of treatment by any and all health care providers and therapists at any time since 2001, including but not limited to narrative reports, charts, progress notes, test results, records of in-patient/out-patient hospitalizations, physical therapy, examination results, diagnostic tests, and prognoses for recovery.

Plaintiff objects on relevance, overbroad, and undue burden grounds. This objection is not well taken. Plaintiff's health is a central issue in this case and Defendant is entitled to a complete picture of Plaintiff's health so that counsel and its experts may assert defenses to her claims.

\* \* \*

>**Request Number 9**: All individual tax returns, including W-2's, 1099's, K-1's and other attachments, filed by you or on your behalf from 2001 to the present, including any and all correspondence from the Internal Revenue Service.

With respect to this Request, Defendant informs the Court that Plaintiff has failed to produce her husband's W-2s. As discussed above, this Court has held that Defendant was entitled to D'Aprile and her husband's joint returns. (Doc. #75). The Court has never held that Plaintiff was to produce the W-2s for her husband only. To the extent that Plaintiff's husband's W-2s are part of a joint tax return, they are discoverable. Defendant concedes that this Court's Order would apply to limit

disclose of D'Aprile's husband's W-2s. In Plaintiff's Brief, counsel states that "in light of this Court's ruling denying Plaintiff's motion for protective order, Plaintiff will produce her unredacted W-2 returns by September 23." Pl. Br. at 4. The Court is troubled that it Ordered that the W-2s be produced in its July 21, 2010 Order and they have yet to be produced. Thus, this Request is due to be granted and the Court expects that these documents would have been produced to Defendant by September 23, 2010, as represented by Plaintiff's Counsel. The husband's W-2s do not need to be produced, but joint returns must be produced in accordance with this Order and the Court's July 21, 2010 Order.

* * *

>**Request Number 12**: All paycheck stubs, monthly earnings histories or other documents reflecting income paid to you from January 2001 to the present.

Plaintiff objected to this Request based on privilege. Plaintiff's response, in conjunction with her privilege log, indicates that she has withheld a "[l]ist of fees/costs for cases from 2000 to 2008" on the ground that the list constitutes "[p]roprietary and confidential business information belonging to" Goldstein, Buckley, Cechman, Rice & Purtz, P.A.

Plaintiff's Brief indicates that she has withdrawn her privilege objection, and has produced a list of case fees and costs for cases that Plaintiff litigated with Goldstein, Buckley, Cechman, Rice & Purtz, P.A., and the firm of Lytal, Reiter, Clark, Fountain and Williams, going back to 1999. The Court finds that this production satisfies Plaintiff's obligations under Federal Rule 37. As discussed above, Plaintiff's tax returns and documents from her accountants should provide the financial information regarding Plaintiff's income from her professional activities. Thus, this Request is due to be denied.

Finally, the Court cautions that it is troubled by how discovery is proceeding in this matter. Thus far the Parties have been unable to work together to reach a resolution on simple discovery matters without Court intervention. The Parties are reminded that they must act in good faith and provide documents and responses to the other side in a timely manner. The Court is particularly troubled that Plaintiff's counsel has failed to provide the Defendant with tax documents that the Court ordered be produced in its July 21, 2010 Order. Plaintiff's Counsel has only now stated that he would produce them by September 23, 2010. When the Court issues an Order directing that documents be produced, it expects that the attorney who was directed to act, will act expeditiously. Failure to do so only results in prejudice to the client, the other side, and causes further delay when yet another motion has to be filed to compel the production. If the Court sees that this type of behavior continues, the Parties are warned that sanctions could be imposed.

Accordingly, it is now

**ORDERED:**

(1) Defendant's Motion to Compel Documents in Response to Defendant's Third Request for Production (Doc. #104) is **DENIED**.

(2) Defendant's Motion to Compel Better Interrogatory Responses and Documents (Doc. #105) is **GRANTED in part** and **DENIED in part**.

    (a) Plaintiff's Motion with respect to Interrogatory Number 3 and Request for Production Numbers 1, 3, 8, and 9 is **GRANTED**. Plaintiff shall answer Interrogatory No. 3 and produce documents responsive to Requests No. 1, 3, and 8 by **September 28, 2010.** Plaintiff shall produce the tax returns and

documents responsive to Request No. 9 and as required by this Court's July 21, 2010 Order by **September 23, 2010.**

(b)   Plaintiff's Motion with respect to Request for Production Number 12 is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___24th___ day of September, 2010.

_____
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record